UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------
:
WANDA RANGE :
: CASE NO. 1:11-CV-1367
Plaintiff, :
:
v. : OPINION & ORDER
: [Resolving Doc. Nos. 8, 9, 45, 55, 56, 61, 67]
CINCINNATI LIFE INSURANCE :
COMPANY, :
:
Defendant. :
:
------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Plaintiff Wanda Range filed this putative class-action lawsuit in Ohio state court against Defendant Cincinnati Life Insurance Company (Cincinnati Life), her life insurer, asserting that Cincinnati Life is in, and will continue to be in, breach of its Ohio-law duty to deal with its insureds fairly and in good faith. In short, Range's complaint is that Cincinnati Life does not take adequate steps to determine which of its policyholders have died and, as a result, unlawfully retains possession of benefits owed under its policies. Range seeks, among other things, a judgment declaring that Cincinnati Life must regularly check the Social Security Administration's Death Master File (DMF) to determine the "life-status" of certain, older policyholders and, on that account, to pay benefits automatically to the beneficiaries of any dead policyholders. *See* [Doc. 23, at 13.]

Cincinnati Life removed the case to this Court, asserting that the Class Action Fairness Act (CAFA), in particular, 28 U.S.C. §§ 1332(d) and 1453, provides a proper basis for federal subject-

-1-

Case No. 1:11-CV-1367
Gwin, J.

matter jurisdiction. *See* [Doc. 1.][1/] Plaintiff Range has moved to remand the case, *see* [Doc. 9], arguing that Defendant Cincinnati Life has not established CAFA's $5,000,000 amount-in-controversy requirement, *see* 28 U.S.C. § 1332(d)(2). Cincinnati Life opposes Range's motion to remand, *see* [Doc. 10], but, somewhat puzzlingly, has moved for both judgment on the pleadings and summary judgment by arguing, among other things, that this Court lacks subject-matter jurisdiction because Range does not have standing to bring her claims, *see* [Docs. 8; 45.]

For the following reasons, the Court concludes that it lacks subject-matter jurisdiction over this case. Accordingly, the case will be remanded to Ohio state court. *See* 28 U.S.C. § 1447(c).

I.

The facts bearing on the Court's subject-matter jurisdiction are generally not in dispute. Nevertheless, the Court observes at the outset that it is empowered—indeed, obligated—to "resolve factual disputes" bearing on its subject-matter jurisdiction. *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915-16 (6th Cir. 1986); *see Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) ("Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element [necessary to establish standing] must be supported . . . with the manner and degree of evidence required at the successive stages of the litigation."). To the extent that the parties disagree on the facts material to Plaintiff's standing, the Court finds as follows:

Plaintiff Wanda Range is a seventy-six-year-old woman who has held a Cincinnati Life life-insurance policy since August 1989. [Docs. 7-2; 52-2, at 66:13-14.] Under that policy, "upon receipt . . . of due proof of" Plaintiff's death, Cincinnati Life is obligated to pay a cash death benefit

---

[1/]Range has asserted no federal-law claims, *see* 28 U.S.C. § 1331, and both Range and Cincinnati Life are citizens of Ohio for the purpose of diversity jurisdiction, *see* 28 U.S.C. § 1332(a).

Case No. 1:11-CV-1367
Gwin, J.

to Plaintiff's husband, the named beneficiary. [Doc. 7-2.] Until Range dies, however, neither she nor her husband nor their heirs are entitled to receive any death-benefit payment from Cincinnati Life. [Doc. 45-2, at 58:4-22.]

Plaintiff keeps her Cincinnati Life policy in a "locked safe" in her home. [Doc. 52-2, at 26:2-12.] Her husband and her children have been aware of the policy "[f]or the past 20 years," know that she keeps the policy in the safe, and have access to it. [Doc. 45-2, at 55:21-56:14.] Plaintiff is confident that when she dies, either her husband or her children will submit a claim on the policy. [Doc. 45-2, at 56:15-57:7.] If that happens, Plaintiff admits, neither she nor her beneficiary will suffer any injury. [Doc. 45-2, at 42:9-24.] Nevertheless, Plaintiff wants Cincinnati Life to check periodically for her appearance on the DMF, so that she can be sure her beneficiary is paid upon her death.

Cincinnati Life, for its part, shows evidence that it takes regular steps to determine the life-status of its policyholders. It sends annual policy statements to its insureds and, if those statements are "returned to Cincinnati Life by the U.S. Postal Service as undeliverable," attempts "to locate a valid, current address for the policyholder" by "contacting the policyholder's agent," "using internet-based location information services," and "using a third-party vendor to search for and compile location and life-status information under the DMF." [Doc. 45-4.] Cincinnati Life does not, however, annually check the DMF for each of its policyholders.

II.

Plaintiff Range does not want to be in federal court. *See* [Doc. 9] (Plaintiff's Motion to Remand). And, in an unusual turn of events, Defendant Cincinnati Life has offered her an out: It asserts that Range lacks standing under Article III of the U.S. Constitution, in effect, that this Court

-3-

Case No. 1:11-CV-1367
Gwin, J.

lacks federal subject-matter jurisdiction.

Article III limits the federal courts to the adjudication of actual cases and controversies. U.S. Const. art. III. "The core component of the requirement that a litigant have standing to invoke the authority of a federal court is an essential and unchanging part of the case-or-controversy requirement of Article III." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006) (internal quotation marks omitted). "The requisite elements of this core component derived directly from the Constitution are familiar:  A plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful and likely to be redressed by the requested relief." *Id.*

Though Range would prefer to press her case in state court, she resists Cincinnati Life's suggestion that she lacks standing under Article III.  *See* [Docs. 12-1, at 7-10; 52-1, at 10-14.] Accordingly, Range, "as the part[y] now asserting federal jurisdiction, [must] carry the burden of establishing [her] standing under Article III." *Cuno*, 547 U.S. at 342; *see also Lee v. American Nat. Ins. Co.*, 260 F.3d 997, 1001-02 (9th Cir. 2001) ("So a plaintiff whose cause of action is perfectly viable in state court under state law may nonetheless be foreclosed from litigating the same cause of action in federal court, if he cannot demonstrate the requisite injury.").

Range argues that Ohio law imposes a duty on Cincinnati Life to deal with its insureds fairly and in good faith.  In particular, she says, Ohio law requires Cincinnati Life to "make reasonable inquiry to determine the life-status of" policyholders "who, like Plaintiff, have reached the age that actuarially indicates a high likelihood of death." [Doc. 23, at 11, 13.]  As Range sees it, Cincinnati Life can properly discharge that duty in only one way:  By annually checking the DMF to see if any of its policyholders have died.  If Cincinnati Life does not annually check the DMF, Range fears, she (or other putative-class-member policyholders) might die without anyone noticing, and Cincinnati

-4-

Case No. 1:11-CV-1367
Gwin, J.

Life will never pay the benefits due under its policies.

Assuming, as it must, that Range correctly states Cincinnati Life's obligations under Ohio law, the Court nevertheless concludes that Range asserts a future injury too speculative to satisfy federal Article III's standing requirements. At the outset, the Court observes that Range will be injured by Cincinnati Life's failure to check the DMF only, if at all, after her death. As Range acknowledges, because she is still alive, she does not now appear on the DMF and, moreover, Cincinnati Life does not currently owe her or her beneficiaries any death-benefit payment. [Doc. 45-2, at 58:4-22.] Range's asserted injury is a future injury—the possible nonpayment of benefits due under her policy, flowing from Cincinnati Life's failure to spot her name on the DMF. And her requested relief—an injunction ordering Cincinnati Life to check the DMF annually going forward—underscores the anticipatory nature of her claimed injuries.

A Plaintiff seeking to base her standing on a future injury "must show that [she] . . . is in immediate danger of sustaining some direct injury as the result of [Defendant's] conduct and the . . . threat of injury must be both real and immediate, not conjectural or hypothetical." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983) (internal quotation marks omitted); *see Lujan*, 504 U.S. at 560-61 ("First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." (internal citations and quotation marks omitted)).

Case No. 1:11-CV-1367
Gwin, J.

"Although 'imminence' is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is certainly impending." *Lujan*, 504 U.S. at 564 n.2 (internal quotation marks omitted).

Range has not demonstrated that she will suffer an imminent injury as a result of Cincinnati Life's failure to check the DMF. It is true that Range, like all of us, will someday die. And upon her death, her beneficiary or her beneficiary's heirs will be entitled to death-benefits under Range's policy with Cincinnati Life. Happily, though, Range is still alive. And, conscientiously, she has made her husband (the named beneficiary), her children, and her children's spouses aware of the policy, its location, and the payment it will entitle them upon her death. [Doc. 45-2, at 55:21-58:3; 71:6-24.] Moreover, Range has no reason to believe that her beneficiary or his heirs will fail to submit a claim on the policy; to the contrary, Range says, "[t]hey would submit one." [Doc. 45-2, at 56:15-57:7; 72:13-22.] Accordingly, by Range's own admission, Cincinnati Life's failure to check the DMF—even if it is a violation of Ohio law—will not cause her or her beneficiary or his heirs any injury. For this reason, Range's dispute with Cincinnati Life is nothing more than an intellectual exercise—a theoretical dispute about the Ohio-law rights and duties of insurers and insureds in circumstances not likely to occur in this case. Article III precludes the Court from providing a forum for that discussion.

That Range styles her lawsuit as a class action on behalf of, among others, policyholders "who are actually deceased, and for which no claim has been made on the[ir] polic[ies] for death benefits," [Doc. 23, at 9], does not improve her standing. "[I]f none of the *named plaintiffs* purporting to represent a class establishes the requisite of a case or controversy with the defendants,

Case No. 1:11-CV-1367
Gwin, J.

none may seek relief on behalf of [herself] or any other member of the class." *O'Shea v. Littleton,* 414 U.S. 488, 494 (1974) (emphasis supplied).

Nor does Range's request for declaratory relief affect the analysis. The Declaratory Judgment Act permits federal courts to enter declaratory judgments as relief in justiciable cases, *see* 28 U.S.C. § 2201, but "does not enlarge the jurisdiction of the federal courts; it is procedural only," *Vaden v. Discover Bank*, 556 U.S. 49, 70 n.19 (2009) (internal quotation marks omitted). Indeed, Congress could not enlarge federal-court jurisdiction beyond the limits set by Article III.

In the end, Plaintiff has failed to sufficiently demonstrate that she or her beneficiaries are suffering or will suffer any injury at the hands of Cincinnati Life, even if Cincinnati Life's failure to check the DMF is a violation of Ohio law. For this reason, Plaintiff lacks standing to maintain her claims in federal court.

III.

Because Plaintiff Range lacks standing, the Court lacks subject-matter jurisdiction over this case. *See Cuno*, 547 U.S. at 354 ("Because plaintiffs have no standing . . . , the lower courts erred by considering their claims . . . on the merits."). In these circumstances, remand to state court is appropriate. *See* 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."). For this reason, the Court GRANTS in part Defendant's motions for judgment on the pleadings and summary judgment, [Docs. 8; 45], GRANTS Plaintiff's motion to remand, [Doc. 9], GRANTS Plaintiff's motion for leave to file a surreply, [Doc. 55], DENIES the parties' motions for oral argument, [Docs. 56; 67], and DENIES as moot Plaintiff's motion for class certification, [Doc. 61.] The Court holds only that Plaintiff has failed to satisfy federal constitutional standing requirements and expresses no opinion

Case No. 1:11-CV-1367
Gwin, J.

whatsoever on the merits of any substantive claim or defense. The case is REMANDED to the Cuyahoga County, Ohio, Court of Common Pleas.

    IT IS SO ORDERED.

Dated: March 27, 2012          s/ *James S. Gwin*
                                                            JAMES S. GWIN
                                                            UNITED STATES DISTRICT JUDGE